UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:22-CR-00004-DCR

UNITED STATES OF AMERICA,                                                                    PLAINTIFF,

v.   MR. COBURN'S MEMORANDUM IN
SUPPORT OF HIS REQUEST FOR RELIEF UNDER 18 U.S.C. § 3553(a)(2)
REQUEST AND SENTENCING MEMORANDUM

RONALD COBURN,                                                                                     DEFENDANT.

\* \* \* \* \*

Defendant Ronald Coburn ("Mr. Coburn"), by undersigned counsel, hereby respectfully submits his request for relief pursuant to 18 U.S.C. § 3553(a)(2) and incorporates the following sentencing memorandum in support thereof in advance of his December 18, 2023 sentencing.[1]

I.   INTRODUCTION TO MR. COBURN

Mr. Coburn pled guilty to two separate criminal counts of the Second Superseding Indictment: Count 12, which charges health care fraud in violation of 18 U.S.C. § 1347; and Count 16, which charges tax evasion in violation of 26 U.S.C. § 7201. These charges alone, however, do not define Mr. Coburn. He has accepted responsibility for his crimes and is undertaking efforts to make amends for his crimes.

---

[1] Mr. Coburn files his Memorandum Regarding Unresolved Objections to the Final Presentence Investigation Report ("Coburn PSR Objections") contemporaneously herewith, which is incorporated by reference herein. The Final Presentence Investigation Report is cited herein as "Final PSR".

1

> There is a longstanding tradition in American law, dating back to the dawn of the Republic, that a judge at sentencing considers the ***whole person*** before him or her as an individual. . . . [T]he sentencing court considers the defendant on that day, not on the date of his offense or the date of his conviction.

*Concepcion v. United States*, 597 U.S. 481, 486 (2022) (citations and internal quotations omitted) (emphasis added). This memo attempts to describe the "whole person" of Mr. Coburn. As set forth below, Mr. Coburn is a nearly 77-year-old veteran who served his country honorably for seventeen years and who currently suffers from substantial degenerative conditions that have left him nearly debilitated, including among other things, atrial fibrillation ("AFIB"), high blood pressure, two heart stents, macular degeneration in his eyes, and osteoarthritis.[2] (Final PSR at ¶¶ 60-64, 69). We respectfully submit that given his advanced age and these significant age and health factors, the Court can impose a substantial non-guidelines, non-incarceratory sentence that would be sufficient, but not greater than necessary, to achieve the sentencing goals of 18 U.S.C. § 3553(a).

## A. Mr. Coburn's Background And Personal Characteristics

Long before Mr. Coburn became a defendant in this case, he led a life of honor defending this country. He is a high school graduate who served in the United States Air Force from 1971 to 1988 as a medical recruiter, achieving the rank of technical sergeant. While in the military, Mr. Coburn attended two years of community college and was honorably discharged in 1988. (Final PSR at ¶ 69).

---

[2] For ease of the parties in their briefings, and the parties and the Court during oral argument, Mr. Coburn is waiving any confidentiality of his protected health information cited in this memorandum and in the Coburn PSR Objections so that the seriousness of his health status may be fully discussed without redactions or needing to close the courtroom.

2

Mr. Coburn's respect for veterans runs deep. As detailed in the letter from his life partner,[3] Norma Baker, he assisted a veteran in need by anonymously purchasing a house and vehicle for him. He did not seek accolades, but rather wanted to humbly assist a fellow veteran in his time of need. (N. Baker Letter, Ex. A).

Following his service in the military, Mr. Coburn continued in the health care recruitment field employed as a private recruiter. Thereafter, seeing an opportunity in the employment drug testing field, he opened up a toxicology lab in 2011 with a business partner. When that partnership did not work out, Mr. Coburn founded LabTox, LLC ("LabTox") in Lexington, Kentucky in 2012. (Final PSR at ¶ 68). While LabTox was technically founded under Norma Baker's name, Mr. Coburn admits that she was his nominee and that he ran the lab as its Chief Executive Officer. (Plea Agreement at ¶ 4).

LabTox was originally started as a urine drug testing lab, primarily servicing licensed suboxone clinics. Later, from approximately Spring 2020 until 2021, when Kentucky and the rest of the country were crippled by the COVID-19 pandemic, rather than closing its doors, LabTox made the investment to partially retool its operations to provide COVID PCR testing services to health care facilities and nursing homes, public and private schools and universities, and other public and private institutions. LabTox provided vital services to Kentuckians during this scary, critical health emergency.

B.   **Mr. Coburn's Debilitating Health Conditions**

Mr. Coburn is 76-years-old and will turn 77 slightly over a month following his sentencing. As his age has advanced, he has been beleaguered by a number of debilitating health issues. He

---

[3] Miss Baker and Mr. Coburn are not legally married but have lived together as if they were husband and wife for over 30 years, and he refers to her as his wife. Miss Baker has no relation to Mr. Coburn's co-defendant in this case, Erica Baker ("Erica Baker" or "co-defendant").

suffers from, among other things, chronic AFIB, a debilitating cardiac condition that leaves Mr. Coburn unable to walk more than 90 feet without needing to stop and rest. Mr. Coburn requires medication to control his condition and needs immediate access to certain medication in the event that he suffers an AFIB attack. His condition also causes him to get up at least once, but often several times, at night just to catch his breath and to try to resume a breathing pattern that will allow him to sleep. (Final PSR at ¶¶ 60-63) (N. Baker Letter, Ex. A).

He suffers from atherosclerotic heart disease and is chronically anticoagulated. He underwent a surgical procedure to insert two stents into his heart in 2011, has had a total knee replacement, and takes two medications to control both his blood pressure and his cholesterol. (Final PSR at ¶¶ 60-63). He suffers from osteoarthritis that impairs nearly all of the major joints in his body, including in his limbs and back, including significant facet arthritis (arthritis of the spine) at C3-4, C4-5, C5-6 and C6-7 and degeneration of intervertebral disc of cervical region. (Final PSR at ¶¶ 60-61).

Both his osteoarthritis and his AFIB conditions require that Mr. Coburn walk with a cane or other ambulatory aide, and he cannot move more than 90 feet without being winded and needing to rest. Mr. Coburn has limited vision in both eyes and suffers from wet macular degeneration in his left eye and dry macular degeneration in his right eye. (Final PSR at ¶¶ 61-62, 64).

Mr. Coburn's medical conditions are degenerative. There are no cures for them, and he will never be able to recover from any of them. Instead, each condition will become increasingly more debilitating with age, thereby progressively increasing Mr. Coburn's unsuitability for an incarceratory setting and increasing his need to have access to medical treatment.

### C. Mr. Coburn's Complete Acceptance Of Responsibility

We want to emphasize that nothing in this memorandum is intended to avoid Mr. Coburn's responsibility or to suggest that he did not commit the health care fraud and tax evasion conduct to which he pled guilty – he did and he accepts *full* responsibility for those crimes. Mr. Coburn very much regrets and is humbled and humiliated by that conduct, which stands in stark contrast to his past service to this country. He has never been in this kind of trouble with the law, and never will be again.

Mr. Coburn is in the process of finalizing his asset forfeiture agreement with the Government in an amount exceeding $1.8 million, and is prepared to sell virtually all of his and his life partner's assets, including their house, jewelry and other personal assets to fulfill his obligations under that agreement. He already has sold a large asset and his attorneys are holding in escrow a substantial sum[4] to be applied toward restitution obligations that this Court may impose.

Shortly after Mr. Coburn accepted responsibility and entered into a plea with the Government, his co-defendant also agreed to plead guilty. As a result, a trial in this case was avoided altogether.

We respectfully submit that based on Mr. Coburn's past military service to our country – and, critically, the unique circumstances of his advanced age and failing health conditions – that a non-custodial sentence for all of the reasons set forth below is appropriate. Mr. Coburn has never been in serious trouble with the law before, and we expect that he never will be again. There is no

---

[4] The Government and Mr. Coburn are currently working out what amounts should be applied to Mr. Coburn for his and Norma Baker's basic living expenses, and for his significant unpaid attorneys' fees.

need to protect the public from him, and his medical care needs would best be met in a home confinement setting.

## II. A NON-CUSTODIAL SENTENCE WOULD FULLY SATISFY THE SENTENCING GOALS SET FORTH IN SECTION 3553(a)

Section 3553(a) requires a Court to consider the "need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," as well as the need to "afford adequate deterrence to criminal conduct," and to "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A)-(C); *see United States v. Wolfe*, 2022 U.S. App. LEXIS 34604 *11 (6th Cir. Dec. 13, 2022). These factors allow the court a much broader range and opportunity for discretionary decision making than afforded in the sentencing guidelines. *See Wolfe*, 2022 U.S. App. LEXIS 34604 at *11-12.; *United States v. Denny*, 653 F.3d 415, 420 (6th Cir. 2011).

### A. The Court Should "Impose A Sentence Sufficient But Not Greater Than Necessary" To Fulfill The Sentencing Goals Under Section 3553(a)

Mr. Coburn respectfully submits that the Court can and should order a non-guidelines sentence of home confinement that can be within the 37 to 46 months range of the sentence recommended in the Plea Agreement, and that such a sentence is sufficient but not greater than necessary to fulfill the sentencing goals set forth in Section 3553(a) in light of his age, physical condition, and lack of criminal history. Applying the factors set forth in Section 3553(a), this case fully supports a non-incarceratory sentence for Mr. Coburn. *See United States v. Duhon*, 541 F. 3d 391, 398 (5th Cir. 2008).

In evaluating whether to apply a variance and impose a non-guidelines sentence of home confinement, this Court should consider its reasonableness under the totality of relevant circumstances as a whole and articulate its reasoning citing facts specific to this case. A sentencing

court is in the better position to find facts and judge their importance under the Section 3553(a) factors with respect to a particular defendant. *See United States v. Taylor*, 800 F.3d 701, 714 (6th Cir. 2015). "At the highest level, procedural reasonableness requires that a district court 'properly calculate the guidelines range, treat the guidelines as advisory, consider the 3553(a) factors and adequately explain the chosen sentence—including an explanation for any variance from the guidelines range.'" *Id.* (citation omitted).

Calculation of the advisory guidelines sentence is only the first step in the sentencing process, and a court must consider whether the Section 3553(a) factors support the requested sentence. *See Gall v. United States*, 552 U.S. 38, 49-50 (2007) (guidelines should be a "starting point" and "initial benchmark"); *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2016) ("If *Booker* is to mean anything, it must be that district courts are obligated to impose a reasonable sentence, regardless of the Guidelines ranges, so long as the Guidelines have been considered."); *Wolfe*, 2022 U.S. App. LEXIS 34604 *15 (citing *Gall* for proposition that guidelines are a starting point and initial benchmark). The Court need not find "extraordinary circumstances to justify a sentence outside the Guidelines range." *Gall*, 552 U.S. at 47.

Rather, after due consideration, this Court is free to reject the advice of the guidelines, after conducting an individual assessment of the defendant based upon the Section 3553(a) factors. *Kimbrough v. United States*, 552 U.S. 85, 113 (2007) (Scalia, J., concurring); *Gall*, 552 U.S. at 49-50. Indeed, not only are the sentencing guidelines not mandatory, they are not presumed to be reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009).

  **(1) History And Personal Characteristics Of Mr. Coburn Reflect Why A Non-Custodial Non-Guidelines Sentence Is Warranted In This Case**

Mr. Coburn is a good man, who honorably served his country for 17 years and, according to his life partner, generously provided a house and vehicle for a fellow veteran who was down on

7

his luck. He also made sure that his life partner's mother was cared for in her last days until her passing, and has been tremendously supportive of his life partner throughout their 31 years together. (N. Baker Letter, Ex. A).

Under both the United States Sentencing Guidelines and Sixth Circuit authority, "a defendant's age, and specifically old age, is a relevant consideration in sentencing." *United States v. Payton*, 754 F.3d 375, 378-379 (6th Cir. 2014) (*citing* U.S.S.G. § 5H1.1; *United States v. Berry*, 565 F.3d 332, 341 (6th Cir. 2009); *United States v. Davis*, 537 F.3d 611, 616-17 (6th Cir. 2008)). This Court should consider Mr. Coburn's personal and individualized circumstances in fashioning a sentence that is sufficient but not greater than necessary to meet the sentencing goals of § 3553(a), particularly given his age and health status discussed above. *See Payton*, 754 F.3d at 379.

    **(2)    A Custodial Sentence Is Not Necessary For Punishment, Respect For The Law, Or Deterrence**

Mr. Coburn does not need a custodial prison term for punishment. He already has lost his business, his freedom, and his way of life. He is prepared to spend a substantial term of home confinement for the 37 to 46-month term contemplated by his Plea Agreement or such longer term that the Court deems appropriate. Such a sentence is serious enough to reflect the seriousness of his offenses but is not greater than necessary to punish Mr. Coburn sufficiently. He is prepared to finalize a substantial asset forfeiture agreement and will pay substantial restitution. He also is prepared to liquidate nearly all of his assets to pay back his victims – federal and state health programs sponsored by American taxpayers. Particularly at his age, surely, that is sufficient punishment for his actions and should send a profound message of respect for the law.

Further, a non-custodial term of home detention for Mr. Coburn, in the twilight of his life, should be enough to send a loud message of general deterrence for this conduct. Recidivism among older defendants is rare. *See* U.S. Sentencing Commission, "The Effects of Aging on

8

Recidivism Among Federal Offenders", December 2017 at 14 (study finding that recidivism rates among offenders over the age of 65 to be 2.1%).[5] The Sentencing Commission has observed that recidivism rates decline consistently as a defendant's age increases and that past fifty years old there is a significantly lower rate of recidivism. *Id.* at 3 (Key Findings: "Older offenders were substantially less likely than younger offenders to recidivate following release."); U.S. Sentencing Commission, "Older Offenders in the Federal System," July 2022 ("U.S.S.C. Older Offenders Report") at Appendix C[6]; *see Payton*, 754 F.3d at 378-379.

Any outside observer thinking about committing a tax or health care violation, or engaging in a conspiracy, need only look at what Mr. Coburn is facing in the last years of his life as he grapples with debilitating health conditions and the havoc his criminal conduct has caused to his life partner, and his livelihood, to be deterred. In addition, we can say that Mr. Coburn has learned his lesson.

  **(3)** **When Evaluating U.S.S.G. Policy Statements And Case Authority, A Non-Custodial Home Confinement Sentence Is Available And Appropriate**

As detailed in the Coburn PSR Objections, the U.S. Sentencing Guidelines (2023) ("U.S.S.G.") provide guidance in the form of Policy Statements in U.S.S.G. §§ 5H1.1 and 5H1.4, which explain that age or physical infirmity may merit a departure from the guidelines where a form of punishment like home confinement might be equally efficient as incarceration. (*See* Coburn PSR Objections at 8-10; U.S.S.C. Older Offenders Report at 6-7). As the U.S. Sentencing Commission explained in 2022 it its Older Offenders report:

---

[5] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf

[6] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220726_Older-Offenders.pdf

9

> District courts typically have considered three age-related factors in determining an appropriate sentence: physical limitations or infirmity, life expectancy, and reduced rates of recidivism. However, the weight an offender's age is afforded in the court's sentencing decision varies depending on the circumstances of the individual offender and the nature of the offense. . . . Typically, age and infirmity justified a downward departure or variance in cases involving relatively serious physical conditions.

U.S.S.C. Older Offenders Report at 7.

Mr. Coburn respectfully submits that his near 77 years of age and his severe medical issues warrant variance for a non-prison sentence under § 3553, which is consistent with a departure contemplated by the U.S.S.G. §§ 5H1.1 and 5H1.4 Policy Statements. He is precisely the type of defendant to whom these policies should apply, and the Court has the authority to impose a non-guidelines sentence under § 3553(a) and the circumstances presented in this case. In *United States v. McFarlin*, 535 F.3d 808, 810-11 (8th Cir. 2008), for example, the Eighth Circuit upheld a sentence of probation imposed upon a 56-year-old defendant who had numerous medical issues, not unlike those present in this case. In *McFarlin*, the defendant suffered from, among other serious maladies, severe coronary artery disease and severe peripheral vascular disease. *Id.* Here, Mr. Coburn is *21 years older* than the defendant in *McFarlin* and suffers from serious coronary issues, debilitating arthritis, and failing eyesight. Citing *McFarlin*, the Sixth Circuit in *United States v. Moses*, 337 F. App'x. 443, 450-51 (6th Cir. 2009), recognized that a district has the discretion to sentence infirm defendants to a non-prison sentence.

**B. The Federal Sentencing Guidelines Are Advisory And A Non-Custodial Sentence Would Be Appropriate Under Section 3553(a) And U.S.S.G. Policy Statements**

In determining an appropriate sentence, the Court's fundamental task is to "impose a sentence sufficient, but not greater than necessary," to achieve the specified purposes of sentencing. 18 U.S.C. § 3553(a). A unanimous Supreme Court explained the application of 18

10

U.S.C. § 3553(a)(2) in *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 765-66 (2020) as follows: "Congress has instructed sentencing courts to impose sentences that are 'sufficient but not greater than necessary, to comply with' (among other things) certain basic objectives, including the need for 'just punishment, deterrence, protection of the public, and rehabilitation.'" (citations omitted).  Federal sentencing courts are free to consider relevant circumstances related to an offense, and the history and characteristics of the defendant, and are not tied to the framework of the U.S. Sentencing Guidelines.  *Gall*, 552 U.S. at 47-52; *Kimbrough*, 552 U.S. at 100-101.  Here, for the reasons discussed above and balancing all of the factors of § 3553(a), a non-prison home confinement sentence is appropriate given Mr. Coburn's age and physical health concerns.

As discussed *supra* and in the Coburn PSR Objections, the policy statements of U.S.S.G. §§ 5H1.1 and 5H.1 contemplate departure possibilities for individuals like Mr. Coburn who are elderly and infirm.  (Coburn PSR Objections at 8-10).  Unfortunately, in this case, the guidelines recommendation by the Probation Office does not appear to take into account Mr. Coburn's age or physical condition, or if it did in fashioning its report, the Probation Office ignores them as it recommends an incarceratory term of up to 87 months under the guidelines.  This failure to account for Mr. Coburn's age and medical condition substantially undermines Probation's recommendation, which ignores the reality that this defendant is a very sick, old man who likely would deteriorate rapidly in prison.

In light of Mr. Coburn's advanced age and severe medical conditions, even an incarceratory sentence within the parties' recommended guidelines range could potentially be a death sentence for Mr. Coburn, and an incarceratory sentence within the recommended guidelines range calculated in the Final PSR could effectively be a death sentence for Mr. Coburn.  Consequently, Mr. Coburn respectfully suggests that a *non-incarceratory* sentence within the

11

recommended guidelines 37 to 46-month range agreed to – and still recommended by – the United States Attorney's Office, is "sufficient, but not greater than necessary" to meet the sentencing goals of § 3553(a).

### III. THE SENTENCING GOALS OF 18 U.S.C. § 3553(a) AND FUNDAMENTAL FAIRNESS WOULD BE FURTHERED BY A SUBSTANTIAL TERM OF HOME CONFINEMENT

For all of the reasons detailed above, the sentencing goals of Section 3553(a) would be furthered by a lengthy term of home confinement. Incarceration – which would amount to a potential death sentence (as his life-partner explains in her letter) – is not necessary under the circumstances to sufficiently punish Mr. Coburn, or for specific or general deterrence. In addition, it would create a substantial and unnecessary drain on the Bureau of Prisons to incarcerate someone of Mr. Coburn's advanced age and debilitating ailments.

> 18 U.S.C. §3553(a)(2) provides:
>
> "[T]he need for the sentence imposed—
> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)   to afford adequate deterrence to criminal conduct;
> (C)   to protect the public from further crimes of the defendant; and
> (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

Given Mr. Coburn's advanced age and debilitating health conditions, incarceration – instead of a lengthy term of home confinement – is not necessary to promote respect for the law, to provide just punishment of Mr. Coburn, to afford adequate deterrence, to protect the public from future crimes, or to afford Mr. Coburn medical treatment in the most effective manner.

Mr. Coburn is prepared to accept whatever home confinement restrictions that this Court would impose, including monitoring and limitations on his ability to leave his residence for any

12

non-medical reason.  Mr. Coburn accepts responsibility for his crimes and has and will continue to pay a heavy price.  His business is gone; he has forfeited nearly all of his assets.  He is broke as he is using nearly all of his remaining assets to pay his asset forfeiture and anticipated restitution obligations.  Most critically, his actions have had a profound impact on his life partner, Norma Baker, who will need to rebuild their entire lives from scratch by re-entering the work force to be their sole financial support.  The fact that Mr. Coburn has let down his life partner, who means the world to him; that he has humiliated her and himself; and that he will not be able to restore her life given his condition to make amends to her for the impact his crimes have had on her is perhaps the most significant punishment he has suffered.

For the foregoing reasons, Mr. Coburn respectfully requests that the Court consider Mr. Coburn's age and medical status in fashioning a sentence of a non-custodial term of no more than 37 to 46 months home confinement as set forth in this memorandum.  In the alternative, should this Court determine that Mr. Coburn should be remanded to the custody of the Bureau of Prisons, Mr. Coburn respectfully requests that he be designated to a camp at a federal medical correctional facility.

Dated: December 11, 2023

                                          KASOWITZ BENSON TORRES LLP

                                          By: */s/ Daniel J. Fetterman*
                                                Marc E. Kasowitz
                                                Daniel J. Fetterman
                                                Joshua E. Roberts
                                                1633 Broadway
                                                New York, NY 10019
                                                Tel: (212) 506-1700
                                                Fax: (212) 506-1800
                                                mkasowitz@kasowitz.com
                                                dfetterman@kasowitz.com
                                                jroberts@kasowitz.com

                                                Ann M. St. Peter-Griffith
                                                1441 Brickell Avenue, Suite 1420
                                                Miami, Florida 33131
                                                Tel: (786) 587-1054
                                                Fax: (305) 377-1664
                                                astpetergriffith@kasowitz.com

                                                *Counsel for Ronald Coburn*

<u>CERTIFICATION</u>

I hereby certify that on December 11, 2023, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>/s/ Joshua E. Roberts</u>
Joshua E. Roberts